Good morning, Your Honors. May it please the Court, Chris Chorba on behalf of Defendant and Appellant Cormackhill, LP. I would like to reserve four minutes for rebuttal. Nineteen years ago, fashion icon Fred Segal sold his retail center on Melrose Avenue to the Brown family for $7 million. Several years later, approximately four years later, my client purchased that property for $43 million. The parties before you today are not the parties to the license agreement, but rather they are successors in interest to those contracts. My client is the owner of the Fred Segal Retail Center, and the plaintiff here, although named Fred Segal, LC, is actually not Fred Segal, the man. It is a subsequent licensee that received the license rights under that agreement. There are three primary issues that I would like to raise in connection with our appeal. All of them center on the construction of the license agreement that is primarily at issue in this appeal. First and foremost, an issue that is critically important to the construction of this contract, but that is not disputed on appeal, is that that license agreement between the Browns and Mr. Segal has not terminated. As the District Court concluded, it did not end when the Browns sold their property. In fact, it is expressly written to survive a transfer, even a transfer outside of the Brown family. By its express terms, it continues in perpetuity to the extent permitted by law, so long as the center is used by the licensee or the transfer of the center pursuant to Section 8.1, which I'll get to in a minute, primarily for retail sales of fashion merchandise, and that's Section 6.1 of the license agreement. Accordingly, the District Court ruled that the agreement did not terminate upon the transfer of the Melrose Center to my client, Cormac Hill, and that with transfers outside of the Brown family, and thus it has not terminated. So the question then focuses on what rights, if any, does my client, Cormac Hill, have? And the plain text of Section 8.1 provides that the signs will stay up if the transferee, my client, is not a member of the Brown family. As we explained in pages 14 and 15 of our reply brief, the pertinent section of 8.1 really has three key clauses. And it provides in full, if the transferee is not a member of the Brown family, Clause 1, the individual tenants shall retain all of their rights with respect to the name, the name being Fred Siegel. And Clause 2, none of the signs in or about the center shall be removed as a consequence of such transfer. But, and this is Clause 3, such transferees shall not succeed to the rights of licensee hereunder. So if I can break down each of those clauses. Number one, if the building is sold. May I ask which clause are you referring to now? This is the first clause, the individual tenants shall retain all. Of what provision? This is Section 8.1, Your Honor. Okay, we're looking at Section 8.1. Yes, thank you, Your Honor. So under 8.1, it's pretty clear that your client does not succeed to the rights of the licensee, correct? That's right, Judge. And both parties essentially have taken the position that the provisions in the license and the radius agreement are unambiguous, except that, you know, obviously you're arguing that it unambiguously supports your interpretation. If your client didn't succeed to the rights of the licensee, then what is the scope of the rights that you've gained with the sentence that you relied on, that the individual tenants shall retain all of their rights and none of the signs shall be removed? The rights are very limited, Your Honor, and I need to be clear. We have not argued, in this case or in this appeal, that we have broader rights, and that respectfully is one of our primary contentions on appeal with Chief Judge Mills. Well, then what is the scope of your rights as compared to the Brown family's rights under the license? Very limited. The Browns had broad rights to use the name as provided in this license agreement. Our client, Cormac Hill, only has the rights to maintain the exterior signage on the Fred Siegel Center. And do you derive that from the clause, and none of the signs in or about the center shall be removed as a consequence of such transfer? Yes, Your Honor, and that's it. Okay, but doesn't that refer directly to, it's in conjunctive with the clause before it that says, if the transfer is not a member of the Brown family, which you're not, the name and none of the signs, isn't that directly related to the tenant's rights, not the transferee rights? It's not, Your Honor, and here's our primary contention on appeal. That's not what the language says. It is conjunctive. That's the way I read it. That's what it says to me. But, you know, make your own. Let me try to convince you of our reading. Because if it wasn't construed that way, then that means you have the right to maintain the signs up in perpetuity? Well, we do, but, Your Honor, that's where the clause that I read a moment ago comes into play, Section 6.1. In perpetuity, but only so long as the center is used for the retail sales of fashion merchandise. So for example, if it became a parking lot or something else, then under the specific terms of this agreement, my client would not have those rights, because the license agreement under its express terms would have terminated under 6.1. So the whole agreement goes away. Without the agreement, there is no right to maintain the signs for a non-Brown transferee. But if I could turn back to Judge Wardlaw's question, the reason why, Your Honor, we think the use of the conjunctive is significant is because it's setting up two separate clauses. First of all, in several places, the agreement makes clear that, and it does this in Section 8.8 and other provisions, that the tenant leases are independent of this license agreement. The tenants were not parties to this agreement, but the parties, the Browns and the Seagulls Right, but this clause recognizes that certain of the tenants did have the rights to use the Seagull name, and that was contemplated in this agreement, that the tenant's rights could outlast a non-Brown family transferee's rights. That's correct, Your Honor, except we need to distinguish between the tenant's right to sell merchandise, Fred Seagull branded merchandise. It's important to remember the history of this property. Mr. Seagull started it in the 1950s and 1960s to sell Fred Seagull jeans, denim wear, and other fashion merchandise, okay? There were longstanding tenants that continued those rights. Here is why it matters. None of the tenants ever had the rights to exterior signage, okay? The building is separate from those exterior signs, and this is in the record. It's two excerpts of record 121, 203 to 33, 234 to 51, 256 to 61, and one excerpt of record 15 and 16. Those are the tenant's leases that are in the record. Not a single one of those leases gives the tenant's rights to exterior signage. And so, therefore, in order to read this contract in its whole provisions, consistently with that, what the first clause refers to is that the tenant's rights to sell merchandise or to use the name for other purposes. For example, there's evidence in the record that Mr. Robinson's store had a Fred Seagull logo on his front door, and that was as of the hearing on summary judgment in December of 2017. And so that's an example, but that is not exterior signage, okay? That's why that second clause, none of the signs in or about the center shall be removed as a consequence of such transfer, must be independent. Because at the time, and even today, the tenants had no rights to those signage. And it makes sense. This was an iconic historical building. It makes sense that Mr. Seagull would want his building, his retail center, to survive the transfer outside of the Brown family. And again, to be clear, my client claims no rights, broader rights. That's another error of Chief Judge Phillips. She concluded that by allowing my client to maintain the signage, it would somehow have broader rights than the Browns. That's not the case. We cannot sell Fred Seagull branded merchandise. We could not use Fred Seagull in marketing or promotional materials. But however, this agreement that Mr. Seagull executed, and the record evidence, we think the contract is clear. You don't need to resort to extrinsic evidence. But Judge Phillips' ruling specifically cited evidence that we submitted that when this clause in 8.1 was added, there was additional consideration for it, flowing from the Browns additional $500,000 for this provision. And the third clause in 8.1 that I didn't get to is that such transferee, my client, the non-Brown transferee, shall not succeed to the rights of licensee hereunder. So that's a critically important limitation on this clause, and why we do not have broader rights. We bought the building with the signs. That's all we get under this agreement. Nothing more, but nothing less. So that's Section 8.1 and the use of the exterior signs. Equally important to my client is when this agreement was amended, there is an express radius provision, or radius restriction. And this is in paragraph 3 of the First Amendment. And this provision explicitly provides that licensor, Mr. Seagull, agrees that during the term of the license agreement, there shall be no other Fred Seagull buildings within a three-mile radius. And that's exactly what's been violated in this case. Shortly after Judge Phillips issued an early ruling on a motion to dismiss in this case, the plaintiff here constructed a sign, or another Fred Seagull-branded store within that three-mile radius. And although that issue was given very brief attention in the district court's ruling, it's still extremely important to our client, because they paid $43 million, okay, six times what the Browns paid only 15 years earlier for this property. And now there's a competing center within that radius restriction. I see that I have my four minutes, so unless there are further questions, I'll reserve the remainder. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court, I will briefly address Cormac Hill's appeal, and then I will turn to Fred Seagull, LLC's cross-appeal. Thank you. The most noteworthy thing about the issues before you today is that the Seagull family and the Brown family created an extraordinary record of what they were agreeing to and what the agreement meant, what their intentions were. The district court correctly found that Cormac Hill is not a third-party beneficiary of the license agreement. The contracting parties made it absolutely clear that only the Brown family would have limited license rights and only, quote, to the extent the Brown family owns and operates the center. That's at page 2, paragraph 3.1 of the license agreement. Non-Brown family transferees, quote, shall not succeed to the rights of the Brown family here under. That's at paragraph 8.1 of the license agreement. Cormac Hill concedes that it's not a licensee and that it has no rights as a licensee, but it contends that it should have greater rights than the licensee as a third-party beneficiary. How are the rights it contends it has greater than the Brown family rights? So when the leases end, when the leases at the facility ended, there'd be no more rights. For example, the Brown family didn't have the right to enter into new leases, giving name rights. Or when those leases expired without any extensions, those leases would end and no tenants would have name rights. And when the Brown family transfers to a non-Brown family transferee, it loses all rights under the license agreement. What Cormac Hill is suggesting to you, and I think Judge Nguyen pointed this out, every transferee, if Cormac Hill is right, every transferee thereafter will be able to maintain the Fred Siegel sign on the building forever. And the Browns never had that right. So the rights are more than what the Browns had to begin with. And certainly the language of the contract between the parties never contemplated such a thing. Well, what do you make of counsel's argument that there's evidence in the record the tenants' rights were limited and didn't extend to the signage on the building itself? So that's quite right. There is language in paragraph 8.8 of the license agreement. Well, but isn't that indicative of the fact that within this clause, the tenant shall retain all their rights with respect to the name and none of the signs in or about the center shall be removed as a consequence of the transfer. So your reading, you want to link that together as tenants' rights. But if the record evidence suggests that the tenants' rights were always meant to be independent of the signage on the building, doesn't that then decouple the two phrases in 8.1 that counsel's relying on? No. And the reason why is that it's very illogical. The tenants had rights in their own leases to use the Fred Siegel name on packaging and they could use the name on the store. They could relate to the world as located in the Fred Siegel Center. They didn't have any rights in their leases about a sign on the building. But the reason that that language was added to the sale agreement is that the Fred Siegel family and the Brown family were concerned that once the property, if the property was a non-Brown family transferee and there were still tenants in the facility that had name rights, it wouldn't be fair to take those signs down. So the language is that the signs don't have to come down as a consequence of the transferee, the transfer to a non-Brown family transferee. But it doesn't mean that the signs have to stay up. It just means that nobody's going to force the non-Brown family transferee to take the still tenants with name rights. That's what that language means. And the agreement has to be looked at as a whole. You can't look at one term in a vacuum. The parties were very clear about what they were doing. Non-Brown family transferees had no rights. There was no license. You can't have a license without a licensee. And the argument that is made here that the Radius Clause attaches to the property forever is completely inconsistent with the language of the agreement. The Radius Clause is part of the license rights of the Brown family. The Brown family paid a lot of money for that Radius Clause in an amendment to the agreement. And that Radius Clause attaches to the license rights. Once the Brown family transferred the property to a non-Brown family transferee, it lost all those rights. And there's no more license. And there's no more licensee. So it doesn't make any sense that the agreement lasts forever. It just doesn't make any sense under the language of the contract. The motivating purpose of the agreement was not to make Cormac Hill, a non-Brown family transferee, a beneficiary. Paragraph 2.2 of the license agreement is very explicit on what the purpose of the agreement was. And that was, at paragraph 2.2, to enable the Brown family to enjoy the benefits of ownership and operation of a retail center using the Fred Siegel name. That's it. That was the purpose, the motivating purpose of the agreement. There was no motivating purpose to allow a non-Brown family transferee to have any rights that the Brown family had or to allow a third party like Cormac Hill to sue to enforce its rights. Nobody would have expected that. That was not an expectation of the agreement of the contracting parties. In fact, Cormac Hill, or a non-Brown family transferee, is nowhere mentioned to have any such rights whatsoever. As Cormac Hill is not a third party beneficiary, we urge the court to affirm the district court's summary judgment ruling in that capacity. If you don't have any further questions, I will turn to the cross appeal. This court should reverse the district court's grant of Cormac Hill's motion for final judgment because it was error to apply law of the case doctrine in connection with the denial of a motion for summary judgment. The denial of a motion for summary judgment is never law of the case, as held by the en banc panel of this court in Peralta v. Dillard. Flash comm relied upon by the district court is not a published decision. It is not binding on this court. And in light of Peralta, the flash comm holding actually confuses the law of law of the case. Peralta clearly articulated why the denial of a motion for summary judgment is never law of the case. The undeveloped facts in a case involving summary judgment presents all kinds of issues to the district court. Facts will influence a court's interpretation of the law, interpretation of the rules to apply, and undeveloped record of facts change as time goes along. And when a court, a district court denies a motion for summary judgment, all it's saying is you haven't proven your case. They're either facts in dispute or you don't have enough and you're going to have to come back and do a better job at trying to prove your case. And that's a trial. Permitting an exception to the holding in Peralta for a ruling of law in consideration of denial of summary judgment will necessarily continue to cloud the doctrine of law of the case. Because summary judgment by definition is based, is not based upon a fully developed record. And as I said, the denial of a motion only means you better do a better job when you're going to trial. And if you look at it, the district court's decision in this case is a perfect example of where things go wrong or can go wrong in connection with the denial of a summary judgment motion. The evidence in the record is incontrovertible that only the Siegel family and the Brown family had the right to extend name rights to the district court. The Browns had the right to extend family name rights at the expiration of the leases. The Browns' right to do that ended when they transferred the property to a non-Brown family transferee. But the district court, citing flash comm, decided that she had already ruled on that issue of law, even though admittedly she didn't have all the facts in front of her to make a decision on that issue. What additional facts does she need? As I understand it, she was applying California law of month-to-month tenancy, that the tenant has a right to extend, and then if they do, that the extension is governed by the same terms as the prior written contract. So the distinction here is fairly easy. It is true that California law presumes that a landlord and tenant can extend a lease as long as both of them agree to do that. They can extend on a month-to-month basis. The problem here is a little different, because while Cormac Hill could extend the leases, which we never opposed, what it can't do is extend the leases with name rights. Well, but the leases themselves contain the grant of the name rights, using the Fred Siegel name to sell clothing and fashion. But the agreement with the Browns says that only the Browns can extend the leases with name rights, or the Siegels, but no one else. So there is nothing to allow a non-Brown family transferee to extend name rights. It can extend the leases, but not the name rights. If that weren't the case, then the language in the agreement would be meaningless, because that would mean that a non-Brown family transferee could extend the lease. They could extend the month-to-month leases forever, and the signs on the building would stay up for as long as they wanted to do that. And that's not what was contemplated by the agreement at all. Only the Brown family had the right, other than the Siegel family, to extend name rights. And when the Brown family transferred that to a non-Brown family member, those rights disappeared, and it could not extend the leases with name rights. And that's why — and the Court didn't have that evidence in front of her, because she didn't really look at the side letter agreement, the license agreement itself, and the actual — They were in the record, but for a completely different issue. Because in the motion for summary judgment, all the plaintiff was seeking to do is a declaratory judgment on the part of the Court. That when the last lease was up in October of 2019, that the rights could no longer be extended. And the Court found at that point, in denying the motion for summary judgment, that that issue was not ripe. And that is at 1 SCR 24. So the Court itself found that that issue of extending leases was not ripe based upon our motion. Leaving that motion, the plaintiff said, okay, well, we didn't do a good enough job to convince the Court, but certainly that was not a rule — a law of the case decision. And the interesting thing, and I'd like to point this out, this was in footnote 6 of our — of our brief. When a district court, in connection with a summary judgment motion, wants to take something off the table, whether it's a rule of law or a fact, it has a procedure to do that under Rule 56F and 56G. It can take something off the table, it will provide notice to the parties, and it will — it can resolve that issue. And that's why law of the case is not really necessary — a necessary tool in connection with the denial of a motion for summary judgment. Because there are other procedures that a district court can follow to take an issue off the table, if it so chooses, at the time. Law of the case is not appropriate in the denial of a summary judgment motion, because the party, the moving party, rarely knows what exactly the Court denied the motion for in the first place. It's not always clear, so a law of the case doctrine doesn't make sense in connection with the denial of a motion for summary judgment. And I think the Court in Peralta recognized that, and therefore there shouldn't really be any exceptions to the doctrine. You're over your time. I'm sorry? You're over your time. Oh, I'm sorry. That's all right. Thank you very much. Just very briefly, on Cormac Hill's main appeal, Mr. Russ made three points that I would like to address. First of all, he claimed that Cormac Hill's rights would be greater than the Browns' if you agreed with our interpretation of the contract. That is not true. The record evidence proves that's not true. We cannot sell merchandise. We cannot use the name in or about the center, except insofar as the existing signs need to remain. We could not put up new signs, and that is a critical difference. This license agreement grants the Browns certain limited rights to use the name. In fact, the license agreement does not allow the Browns to use the name in cyberspace or in advertising. But that does not mean that the license agreement is limited only to the signage. That is completely inconsistent with Section 3.1 of the license agreement. But under your interpretation, do you have the right to veto use of the name within a three-mile radius? Well, we have the right to enforce that because the amendment is clear that for the term of the license agreement, Mr. Siegel's promise to not allow the use of his name within a three-mile radius must be enforced. So is that also, under your understanding, in perpetuity, a right in perpetuity? Your Honor, it's in perpetuity, but that's the second point that Mr. Russ made that I'd like to address. He said that we can keep the signs forever. Not true. Mr. Siegel was very clear that the non-Brown transferees' rights are only insofar as the center is used for the retail sales of fashion merchandise. So if it becomes a business park, it becomes a parking lot, a gas station, the license agreement by its own terms... Well, I'm likely, Your Honor, but there are many, many, many other uses in the surrounding area that are not retail sales of fashion merchandise. So again, Mr. Siegel was very specific. He would allow the signs to remain, but not in perpetuity, full stop. In perpetuity, only insofar as it's used. And my client may very well decide to develop the property into something else. For example, if it's a retail store that's not fashion merchandise, you can't call it the Fred Siegel Record Store or some other retail area. It's a retail establishment. The third point is he said that we need to understand why this actually makes sense. Because the Browns were not just purchasing this property, a random piece of property on Melrose. They were purchasing an iconic location, and they purchased that knowing that at some point they may sell outside of the Browns' family. So this was specifically negotiated, $500,000 additional dollars for this provision. And guess what? They realized that. And they made a six times profit on the center 15 years later when they sold it to my client. So it was very significant. But isn't it significant that the language of the radius agreement provides that the licensee has the right to enforce, or I guess veto, the use outside the three-mile radius, and you didn't take on the rights of the licensee? So I have a hard time kind of reconciling that against just the one provision you're relying on, which is the $500,000. I guess the signage in the building shall remain up. And, Your Honor, we focus on the earlier term of the amendment, which states, and it's an amendment to the license agreement, which states that as long as the agreement, the license agreement, has not terminated. And that's what we're relying upon here. And I would like to note that even if you disaggregate the signage provision in 8.1 and the amendment, which contains the radius restriction, even if you construe the radius restriction to be limited only to the three-mile radius, that's not going to be the case. And even if you construe the radius restriction to be limited only to the licensee, defined as the Brown family, that still is independent of 8.1, and that's a point I'd want to make. Is there anything in the record that could shed light on why there was this condition of the transferee remaining a member of the Brown family? Was there anything that shows, is there a unique relationship between the two? There is, Your Honor. I'm not sure if it's in the appellate record, but I can tell you, having worked, all of us worked on the district we're proceeding, the Browns, I believe, were Mr. Siegel's insurance agent, but they were also family friends. And so there was this critical, important distinction. There was a relationship. And so perhaps there was additional trust when it was being sold to the Brown family that even if it wasn't Mr. Brown himself, if it was one of his heirs or someone else within that family, there would be broader rights given under the license agreement. So in other words, and this is another point on perpetuity, if Mr. Brown continued to sell and continued to keep it within his family, Mr. Siegel appreciated that that might go on forever. And that's why you have this condition that it still must be used for the retail sale of fashion merchandise. Okay, that's a critical, important distinction. Once that ends, the license agreement by its own term terminates. And that's why I started with, it is not an issue on appeal that the license agreement remains in effect today by its own terms. I know you're over your time, but did you want to respond on the district court on the cross-appeal? Yes, I appreciate that, Your Honor. Just three quick points. We think cross-appellant is misstating Judge Phillips' ruling. Her ruling, you can't argue that Section 8.1 means there's a right in the tenants, but then come back and basically say, okay, so we prevailed on summary judgment, but now we're going to argue that the tenants no longer have any rights. That's just completely inconsistent. And her ruling, we need to remember, there were actually two different motions before her. She decided them in one ruling. There was the motion to amend. It was actually plaintiff that sought to amend its complaint to make a new argument with respect to tenants. And Judge Phillips said that the deadline to amend had passed 11 months earlier. There was no effort to amend the scheduling orders. That was ruling number one. Ruling number two was there was insufficient diligence shown. At the very end, she said, and by the way, I already construed this contract in a way that you urged plaintiff. The law of the case statement is a throwaway line, respectfully, at the end. It's dicta. It wasn't the basis for her ruling. But what does that mean? If you were to reverse and say it's legal error to apply law of the case to a summary judgment ruling, it's the same contract. It's the same interpretation. Whether you call it law of the case or something else, it's a distinction without a difference. And the final point I would make is Mr. Russ claimed that this is a backdoor way of rewriting the license agreement in a way Judge Phillips rejected. That we, my client, could extend the month-to-month tenancies forever. That's not the case, okay? There is a financial condition on this. Again, number one, if it's not used for retail merchandise, the license agreement. So your contention is that the license for the use of the name and the right of the tenant to keep the signage up also is renewed along with the month-to-month? Tenancy. And that's what Judge Phillips concluded. Right, that's what she concluded. And in your view, does the radius agreement also extend along with the tenants?  Of that right? It would, Your Honor. Because in fact, it's making the tenants, it's more difficult for the tenants to compete. Tenants which may or may not, and I should be clear, today they are not selling Fred Siegel branded merchandise. But at the time of the license agreement, they were. And it would actually frustrate those tenancies if you allowed a competing store within the three-mile radius. So there are multiple beneficiaries of this contract. And under that scenario. But my point is, we couldn't continue month-to-month tenancies forever. There would be sub-market rates being paid for a prime location on Melrose Avenue. So the notion that it would just allow us to backdoor this, well, that's a risk that Mr. Siegel took. If you're going to construe the agreement as providing rights in the tenants. Thank you for the additional time. All right, thank you, counsel. Fred Siegel v. Cormac Hill is submitted.
judges: Thomas, Wardlaw, Nguyen